## In re POMEROY.
### Patent Appeal No. 3104.

Court of Customs and Patent Appeals.

April 24, 1933.

Warfield, Fraser & Brown, of New York City (Donald L. Brown, of New York City, of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Examiner rejecting all claims of appellant's application, serial 178,644, for "Method and Apparatus for Suppressing Surges in Hydraulic Systems." Only apparatus claims are presented in the appeal.

It is stated in the specification that the invention "relates to an apparatus for suppressing surges in hydraulic systems, * * * particularly in pipe lines which are in high duty service such as conveying oil in the crude or refined states. * * *"

The brief of appellant contains an interesting statement as to the production of "surges" in oil pipe lines. The piston of the oil pump impresses great velocity upon the "pressure wave," and it is stated that: "Where there is a bend in the pipe line, or where the pipe line is closed, these pressure waves strike against the bend or end of the pipe and are reflected back toward the piston. When the piston is operating at such speed that the reflected wave reaches the piston head co-incidentally with the creation of a new pressure wave by the piston, the combined effect of the two waves is to create a substantially increased pressure surge in the system."

The suppression of such surges is the problem which appellant claims to have solved by his device which is broadly described in the statement of the Examiner as follows: "* * * The alleged invention relates to the positioning of an air cushion chamber at a point in a hydraulic system which is subjected to pressure impulses at the points in said system where the loops of the pressure impulse are apt to arise, the said chamber being provided with means for replenishing the air supply in the chamber. More specifically, the air chamber comprises a secondary air chamber in the nature of a float valve therein. * * * The base of the primary chamber comprises a seat to receive a valve head which is located at the bottom of the secondary chamber to shut off communication between the pipe line and air chambers when the system is quiet. When a surge occurs the valve is opened, the fluid compressing the air in the primary chamber acting in turn on the air within the secondary chamber through the openings at the top of the chamber."

Claim 14 appears to be a typical one, and is here quoted: "In a hydraulic system, the combination with a pipe line, subject to the

transitory building up of pressure impulses, of a chamber having fluid communication at its lower end with said pipe line at a point substantially where a loop in said pressure impulse may arise, means for supplying a gaseous medium under pressure to said chamber, and a float within said chamber having a substantially unimpeded vent-like orifice at its upper end and a tubular connection leading therefrom to a point adjacent the lower end, whereby liquid which may leak into the float is discharged from the orifice upon a material fall of the external pressure."

Other claims emphasize, or are more specific to, particular features, such as the float construction with reference to air flow, compressed-air tank, and air supply means generally, and other limitations which do not require particularity of description.

The rejection by the tribunals of the Patent Office was based upon alleged lack of patentability over the prior art; the references cited being: Cregier, 359315, March 15, 1887; Haniel et al. (Ger.) 222802, June 3, 1910; York, 1342491, June 8, 1920; "The Theory of Wave Transmission," by George Constantinesco, published in 1922 in London, England, by Walter Hoddon, 132 Salisbury Square, E. C. 4, pages 10 and 11, including Fig. 5.

The Cregier patent relates to "pressure-regulator for water-supply mains" and that of York to "water-submerged air-chamber for water-pipes." The specification of the former states that it is "to provide against the effects of the ram or pulsations due to the flow of water or other fluids in mains or pipes for the water-supply of cities and towns, and other purposes." Among the objects of the latter is "to provide a more sensitive and efficient device for absorbing hydraulic impacts. * * *"

These references were cited, as we understand the decisions below, principally to show the state of the art and not because of any structural features claimed to be anticipatory of appellant's combination. They show, among other things, certain modes of controlling air pressure in a container.

The pages from Constantinesco's book were cited, according to the brief of the Solicitor for the Patent Office, "merely to show that it was known that stationary zones of pressure would occur in hydraulic systems."

The specification of the Haniel et al. patent states that its object is "an air vessel with an arrangement which prevents the escape of air from the air vessel in the event of a great decrease in pressure in the pipe line," and gives a description of operation as follows:

"As long as the air vessel is sufficiently filled with water (F indicates the water level in this case) the buoyancy of the float keeps the valve C automatically open, the water can accordingly through the valve opening of C be collected in the air vessel or delivered again. If however the water level sinks so far that the weight of the float exceeds the residual buoyancy of the same, and that in consequence of the circumstance that the water weight pocket emerges from the surface of the liquid the weight of the amount of water in the pocket E will increase the combined weight of the valve C and its float. In so doing the valve closure will be effected before so much water can pass out of the air vessel that the air too can flow off through the pipe line B.

"If the pipe line B, however, receives a higher pressure than that which prevails in the air vessel A then the water will at once lift the valve C with its accessories, and the level of the water which may have fallen for example to G in the air vessel will rise again."

It was held by the tribunals of the Patent Office that the structure of the Haniel & Lueg device, in all essential principles, anticipates that of appellant, and that, since Constantinesco teaches that stationary zones of pressure occur in hydraulic systems, it would be obvious to place the Haniel et al. device at the points in the pipe line system where such zones of pressure occur.

It may be here stated that the Haniel et al. specification and claim make no reference to any hydraulic art other than water supply mains or water pipe lines. The specification of appellant makes particular reference to oil pipe lines, but the claims are not limited to oil, and do not eo nomine mention oil.

It seems to be true, as stated in appellant's brief, that Constantinesco's primary object is to teach "that waves, * * * may be propagated through a fluid in a pipe line by means of a suitable pump in such a way as to transmit power to motors connected with the lines at a distance." Nevertheless, it is not disputed that he does teach that stationary zones of pressure occur, and this is all that his work was cited for. It is not claimed that his disclosure "would help anyone to solve the problem of surge-suppression," except as it teaches the existence of the condition named.

It seems to us that appellant's case must turn upon a comparison of the structural features, in the combination arrangement made by him, with the structural features of Haniel et al., as combined in the latter, and in determining patentability it is necessary to bear in mind the familiar principle that the claims are the proper measure of an applicant's invention.

Appellant epitomizes his contentions as follows: "It is appellant's position (a) that the structure disclosed by Haniel differs substantially from the structure defined by the claims in issue; (b) that there is no indication in either Haniel or Constantinesco that the disclosures of these two references can or should be combined; (c) that Haniel's device cannot be affixed to a system such as shown by Constantinesco without rendering the device inoperative; and (d) that even if Haniel's device could be affixed to the Constantinesco system to operate as a surge-suppressor, it would involve invention and justify the issuance to applicant of the claims here in issue to determine where the device was to be combined with the Constantinesco system."

The record contains an affidavit by Dr. Harold Horton Sheldon, professor of physics at New York University, in support of appellant's application, which we have examined with great care. This affidavit is in support of the argument made by the appellant as to the Haniel et al. device being intended to operate in water supply systems wherein a different phenomenon is dealt with than that "dealt with in connection with the Pomeroy invention." It is stated in the affidavit that: "The Haniel and Lueg device considered in the light of the disclosures of their patent is, in my opinion, intended to serve only as an ordinary air-chamber without thought of dissipating large amounts of energy. This conclusion is based mainly on the structural features disclosed in the Haniel and Lueg drawing, in which the air chamber is shown as provided with a float merely for the purpose of controlling the air-chamber outlet valve with the ordinary rise and fall of the liquid level. The float is shown as constructed of thin sheets of metal. If, therefore, an extraordinary or steep compressional impulse were applied to the Haniel and Lueg device, the float in my opinion, would collapse and would not stand up in a service where such surges arise, such as the Pomeroy invention is designed to overcome."

There is no disposition on our part, nor does there seem to have been any disposition on the part of the tribunals of the Patent Office, to question the veracity or accuracy of Dr. Sheldon's affidavit, but the great difficulty for appellant is that the affidavit comprises, in the main, only opinions, and there is no statement of fact as to patentable differences in the principles of the conflicting structures.

It is argued by appellant that Haniel et al. provide a small float, while appellant provides a large one. This may be, but the claims of neither Haniel et al. nor appellant show anything as to the sizes of the respective floats. It is alleged also that the Haniel et al. device "would not stand up in service" in an oil pipe line, but appellant's claims, like the claims of the reference, show nothing as to any particular strength, nor is there anything in appellant's claims to show any structural features, or combination of features, which would produce a stronger device than that of the reference. It properly may be remarked that generally there is no invention in making a device strong enough to perform the function for which it is designed; that is, there is no invention in merely producing strength. We must look to the structure which produces it and determine whether invention lies there.

As to appellant's argument (b), relative to the impropriety of combining Haniel et al. and Constantinesco, that seems to be fully answered by the statements heretofore made as to the purpose of the latter's citation.

We have given close attention to the argument that the device of Haniel et al. "affixed to a system such as shown by Constantinesco" would result in inoperativeness of the device. That the Haniel device would not affect the result which Constantinesco discussed—the transmission of power through the instrumentality of waves in hydraulic systems—may be conceded. Neither would appellant's device do that. Neither Haniel et al., nor appellant, sought any such result. We assume that appellant must mean that Haniel et al. would be inoperative to perform the function of surge suppression. We can only reiterate that, testing the question of invention by the contents of the claims, no facts appear which would justify our so holding.

The last argument, that it required invention to produce appellant's device, even conceding the workability of Haniel et al. applied to Constantinesco, is answerable, as are the other arguments. There are no structural differences (the respective claims being always looked to for the test) which distinguish the conflicting devices in a patent-

able sense, and we cannot disagree with the soundness of the observations of the tribunals of the Patent Office to the effect that it would be obvious to locate the device at the point where its utility is effective.

The decision of the Board of Appeals is affirmed.

Affirmed.