29 C.C.P.A.(Patents)

## In re COLIN.

### Patent Appeal No. 4529.

Court of Customs and Patent Appeals.

Dec. 29, 1941.

James M. Graves, of Washington, D. C., for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

All of appellant's claims, 1 to 22, inclusive, in his application in the United States Patent Office for a patent relating to the stabilization of lubricants were rejected by the Primary Examiner, and upon appeal to the Board of Appeals the decision of the examiner was affirmed. Appellant has here petitioned for a determination of the appeal and revision of the board's decision.

Both article and process claims are in the application, but the process involved resides in the use of the article defined in the article claims.

The alleged invention relates in general to the stabilization of lubricants and more particularly to hydrocarbon mineral lubricating oils and consists in incorporating therein compounds effective to inhibit or retard deterioration in service. Petroleum hydrocarbon oils are susceptible to oxidation and other chemical action which tends to deteriorate the same when in service conditions, with the result that acid, gum or sludge formation or change in color and viscosity are encountered. The object of appellant's alleged invention has been accomplished by the incorporation of compounds which have a retarding effect upon the deterioration. A great number of compounds have been tried as is evidenced by statements in the instant application and the prior art cited. The incorporation of some of such compounds was found to be useful for the purpose intended, while that of others was either neutral or harmful.

Appellant uses alkoxy-substituted aryl amines and specifically emphasizes the use of p-phenetidine, di-anisidine, and p-anisidine.

The claims were rejected by the examiner upon the reference Industrial & Engineering Chemistry, Vol. 19, No. 11, November 1927 "Deterioration of Mineral Oils" by Mead et al., pages 1240 to 1245, inclusive.

Claim 1, being the broad claim calling for an alkoxy-substituted aryl amine generally, is illustrative of all the appealed claims and follows:

"1. Mineral oil composition comprising a viscous hydrocarbon oil normally tending to deteriorate in service and having incorporated therewith deterioration inhibiting proportions of an alkoxy-substituted aryl amine."

Claim 20 calls for maintaining the oil at temperatures "of the order of 200° F. for a prolonged period in the presence of water and air," and claim 21 calls for the inclusion in the combination of a sufficient quantity of the particular amine in question "to reduce substantially the tendency of the oil to deteriorate under the conditions of the Funk Machine test."

The prior art cited clearly discloses the use of an alkoxy-substituted aryl amine, namely p-anisidine, for the same purpose as that of applicant. Mead et al., however, list p-anisidine as not being useful as a deterrent for decomposition of hydrocarbon oil but suggest that under the conditions of the particular experiments made by them it accelerated the reaction. In making their tests they used commercial transformer oils, and, in all, 177 substances were tested. Of the 177 only 48 showed useful inhibiting action. They stated that the remainder have comparatively little effect or else accelerate the reaction, the majority being in the second category. A special list was prepared of the substances which give values above 60. Certain ones were listed between 60 and 75, between 75 and 100, between 100 and 150, and others were listed with a value as high as 500. P-anisidine was listed with 44 other substances in the group ranging in value between 100 and 150. The specific value for each of these substances was not definitely shown, i.e. it was not shown just where in the range between 100 and 150 the value for p-anisidine lay, but as we understand the reference a statement that it had a value between 100 and 150 means that it had a

value more than 100 and therefore the results shown would be harmful.

The applicant argues here that a reference teaching that the use of p-anisidine is harmful rather than helpful should not be regarded as anticipatory of the claims presented in the application.

The Board of Appeals in referring to the reference said: "According to the Mead et al. article on page 1245, the p-anisidine gave at least no better results than if it had not been used."

The examiner on this phase of the case said: "It is thought clear that Mead et al. appreciated the possibilities of preventing the deterioration of hydrocarbon oils by adding .1% of p-anisidine thereto and that the resulting composition, which corresponds to that defined in the appealed claims, was tested under the conditions described. The fact that the tests indicated a lack of efficiency of the compound in question is not considered to destroy the pertinency of the reference since the authors cautioned the reader that under a different set of conditions a different result might be obtained."

Mead et al., after stating the results of their experiments and tests of many substances, said: "These results refer only to the definite stated conditions of experimentation, and their extension to other conditions is liable to lead to erroneous conclusions."

■■ Appellant took the old material of Mead et al., and by further experimentation, which we think was to some extent suggested by the latter, although the conditions differed from those used by Mead et al., discovered that the result instead of being harmful was, in fact, useful. Appellant argues that although the combination is old, it is new in the sense of the patent law and that the Mead et al. publication should not be regarded as a proper reference for the rejection of the claims since, as he contends, the publication contributed nothing to the art involved.

The Board of Appeals, in affirming the decision of the examiner, said:

"Applicant contends that having found the inhibitor in the mineral oil composition as effective, he should be allowed a patent over Mead et al. who show the composition but found the inhibitor ineffective under certain conditions. According to the Mead et al. article on page 1245, the p-anisidine

gave at least no better results than if it had not been used.

"The claims include a statement that the amine is incorporated in the oil in deterioration inhibiting proportions. In other words, applicant uses enough of the amine to inhibit deterioration, acid, sludge or emulsion formation.

"As was stated in In re Lewis [Cust. & Pat.App.]; 108 F.2d 248; 514 O.G. 560, the patentability of a product claim must be found in the product itself, not solely on the alleged function asserted for the product.

"No definite percentage of inhibitor is stated in the claims which it must be in order to state a difference in kind rather than a difference in degree. Minerals Separation v. Hyde, 242 U.S. 261 [37 S.Ct. 82, 61 L.Ed. 286].

"Applicant indicates that various amines vary in ineffectiveness relative to each other and to different oils. Mead et al. state the same, in effect, at the end of page 1245 and elsewhere on page 1240 they state that oxidation at 100° C. is slight. The tests on the compositions indicated on page 1245 were made at 130°–140° C., whereas the tests made by applicant were under 100° C. at 200° F.

"It is our view that the composition is old as claimed or obvious from Mead et al. It does not render Mead et al's composition patentable to test the same at 200°F. (claim 20) or by the Funk machine test (claim 21)."

It seems to us that the above quotation from the board's opinion fully answers the contentions of appellant. Surely, appellant is not entitled to a patent on a composition or a process based upon its use merely because, by experimentation at certain temperatures and under certain conditions, he has found that the substance rejected by the prior art has utility, when the claims presented contain no definite percentage of inhibitors or any other limitations or elements which lend patentability. If appellant, by using p-anisidine in a certain critical percentage or at critical temperatures or under other critical conditions has discovered why Mead et al. had not found the material beneficial, his invention, if any, would rest in such discovery, and these critical conditions which brought about the useful results should be presented in the claims.

It is not argued here that the limitations with reference to the Funk machine test or the temperature "of the order of 200° F."

lend patentability to the claims containing them if the other claims not containing them are not allowable, but even if it were so contended it would be unavailing for the reason that there is no showing that the success claimed flows from any criticalness of the temperature "of the order of 200° F." employed in the Funk test.

Appellant in arguing that the Mead et al. reference should not be a bar to obtaining a patent, since it teaches the opposite of the result of his discovery, relies upon the following authorities: Warren Bros. v. City of Owosso, 6 Cir., 166 F. 309 and Robinson on Patents (1890), Vol. 1, page 445. Both of these authorities go to the question of abandoned experiment in determining priority of invention. Determining priority of invention is a wholly different question from determining what would be inventive over the suggestion of a reference such as we have in the instant case.

The decision of the board, affirming that of the examiner in rejecting the appealed claims, is affirmed.

Affirmed.

GARRETT, Presiding Judge (concurring).

It is my view that under a fair construction of the patent law there may be circumstances or conditions by reason of which a party who finds effective or helpful a process disclosed in prior art but taught in such art to be ineffective or harmful may be entitled to a patent as a discoverer. I think this broad generality admits of no serious challenge and I do not understand the majority opinion to hold otherwise. To entitle one to a patent, however, under such circumstances, obviously the application should definitely show the conditions which render the article or process effective and I am unable to find where that is shown in the instant case. It is pointed out in the majority opinion that the authors of the publication, cited as a reference, to quote the language of the examiner, "cautioned the reader that under a different set of conditions a different result might be obtained." It is my view that if appellant had definitely pointed out differences in conditions respecting his experiments and developments and phrased his claims accordingly, a different conclusion might be proper, but having failed to do this the conclusion reached by the majority is the correct one.