38 C.C.P.A.(Patents)
### Application of KRUKOVSKY et al.
### Patent Appeals No. 5715.

United States Court of Customs
and Patent Appeals.

June 30, 1950.

Rehearing Denied Sept. 29, 1950.

Robert V. Morse, Ithaca, N. Y., for appellants.

E. L. Reynolds, Washington, D. C., for Commissioner of Patents.

Before GARRETT, Chief Judge, and Jackson, O'Connell, Johnson,CLdsia-p[lp JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

JOHNSON, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner rejecting all the claims, 1 to 6, inclusive, in appellants' application for a patent entitled "For Milk Process."

The brief on behalf of appellants describes the alleged invention as "a process for preventing the development of tallowy flavor (i. e. "oxidized flavor") in *milk*, by the prompt and controlled removal of normal ascorbic acid content from the whole milk complex."

Claim 1 is considered as illustrative of the subject matter and reads:

"1. A process for inhibiting the development of tallowy flavor in milk and products subject to tallowy flavor derived from milk which comprises selectively eliminating vitamin C (ascorbic acid) from fresh milk early in the normal processing of fresh milk, whereby the reactions involved in the development of tallowy flavor are checked in their initial stages."

Claim 4 is substantially identical in scope with claim 1, Claims 2, 3, and 5 recite additionally that the process which results in the elimination of the ascorbic acid is terminated before useful components of the milk such as riboflavin are destroyed. Claim 6 is similar to the other claims with the addition of the step of pasteurizing the milk. Therefore, so far as the prior art is concerned, all of the claims must stand or fall together. The claims were rejected

as lacking invention over the prior art and also on the ground of indefiniteness.

The references relied on are: Olson et al., "Oxidized Flavor in Milk XI." Reprinted from Journal of Dairy Science, Dec. 1942, Vol. XXV, No. 12, pages 1029–1039, pages 1029 to 1035 only; Olson et al., Journal of Dairy Science, Vol. 25, July-Dec. 1942, pages 1027, 1028, 1036 to 1038, 1041 to 1050; Rosenberg, "Chemistry and Physiology of the Vitamins," 1942, Interscience Publishers, Inc., N.Y., pages 292, 295.

The application discloses that the development of the tallowy flavor, which is also known as oxidized flavor, in milk is traceable to the ascorbic acid (vitamin C) content of the milk, and the claims relate to a process which is said to prevent the development of that flavor in milk. That result is said to be accomplished by eliminating the vitamin C (ascorbic acid) content of fresh milk. The vitamin C may be eliminated by photo-oxidation, or chemical oxidation; that is, by exposure to sunlight or ultraviolet rays from suitable lamps, or by oxygen, or any other available method.

Appellants' description presents experiments using photo-oxidation, the source of ultraviolet rays being daylight diffused through window glass. However, it is stated that the particular means used is immaterial provided the treatment is started promptly and is stopped as soon as the vitamin C is eliminated, and before the riboflavin is destroyed.

The Rosenberg citation describes vitamin C as occurring in cow's milk and discloses the susceptibility of the vitamin to destruction by oxidation.

The Olsen et al. references represent selections from a series of papers, published in the Journal of Dairy Science, reporting work done at the West Virginia Agricultural Experiment Station on oxidized flavor in milk, and teach that " * * * it would seem that the mechanism for the development of oxidized flavor in milk might be the oxidation of ascorbic acid with the production of hydrogen peroxide which then oxidizes the phospholipids, liberating the compounds which give the oxidized flavor"; that " * * * ascorbic acid has been shown to catalyze the oxidation of phospholipids and produce an oxidized flavor in washed cream * * *"; that "The results obtained in this experiment indicate that either ascorbic acid or glutathione, or both, are probably involved in the mechanism whereby an oxidized flavor is developed in milk"; and that "Both glutathione and ascorbic acid catalyze the development of oxidized flavor."

Appellants contend "(1) that Olsen & Brown's experiments were not in fact conclusive even as to the role of ascorbic acid with 'washed cream'; (2) that even if they had conclusively established that ascorbic acid caused tallowy flavor in such an isolated material, it was still not obvious or certain that no other action in the complex environment of milk would give the tallowy flavor, so that until appellants successfully carried thru their definitive experiments no patentable discovery was made"; in other words, that the experiments described in the Olsen et al. references are not sufficient to support the conclusions stated.

A publication need not be definitive to constitute a valid anticipation of a claimed invention. We have held that a printed publication is a proper reference against a patent application although the invention as disclosed in the publication is not described in the terms used in the application, so long as the same inventive concept is found in both, In re Wenzel, 88 F.2d 501, 24 C.C.P.A., Patents, 1050. A publication anticipates where it discloses the claimed process even though accompanied by a statement that the process is impracticable for commercial use. In re McKee et al., 96 F.2d 504, 25 C.C.P.A., Patents, 1116. A publication teaching that a named compound lacks efficiency to bring about the desired results under the experimental conditions described and including a statement cautioning readers that different results might be obtained under different conditions was held to be a proper reference by the court where the patent applicant by experimentation had found the named compound to have utility under certain condi-

tions, In re Colin, 124 F.2d 219, 29 C.C. P.A., Patents, 757. A patent application claiming a specific compound as the essential ingredient of an insecticide was held, on the authority of In re Colin, supra, to be properly anticipated by a publication disclosing that compound though accompanied with a teaching that it was not as effective as other insecticides, where the applicant had merely discovered that the compound was effective under certain unclaimed conditions, In re Smith, 148 F.2d 351, 32 C.C. P.A., Patents, 959. The relevancy as an anticipating reference of a publication disclosing a claimed composition of matter was held not to be overcome by allegations that the processes set forth in the application would not produce the composition, the court being unable to hold that the disclosure was merely accidental. The court there held that where a product is clearly disclosed in a publication, the operativeness of the processes by which it was stated to have been produced is immaterial, the mere disclosure of the composition being sufficient to anticipate a claim for it. In re Crosley et al., 159 F.2d 735, 34 C.C.P.A., Patents, 882.

In the instant case, the authors of the publication references undertook to examine the mechanism of oxidized flavor in milk, beginning with the hypothesis, drawn from the research of others, that "the mechanism for the development of oxidized flavor in milk might be the oxidation of ascorbic acid with the production of hydrogen peroxide which then oxidizes the phospholipids, liberating the compounds which give the oxidized flavor." These men, recognizing that experimentation with milk is "complicated by the number of interfering substances," reasoned on the basis of work done by others before them that "If it is the phospholipids that give the oxidized flavor, they should be easily oxidized in washed cream and this could be used to test the theories." Accordingly, the authors selected cows whose milk was susceptible to oxidized flavor, and using their milk, gathered each morning, pasteurized and separated the milk, taking the cream so derived and washing it five times. It was that washed cream upon which the experiment performed by the authors was conducted. From the experiment, the details of which it is unnecessary for us to recount here, the authors concluded that "either ascorbic acid or glutathione, or both, are probably involved in the mechanism whereby an oxidized flavor is developed in milk," adding that "Both glutathione and ascorbic acid catalyze the development of oxidized flavor."

That *conclusion* is not a mere hypothesis, but a reasoned conclusion drawn from an appraisal of the fruits of the research of others who preceded the authors, as well as by the empirical data derived from their own carefully controlled experiment. The appellants make a vigorous attack upon the conclusion stated by the authors, alleging it to be inconclusive as an anticipation of their process because the authors carried on their experiment with washed cream rather than the whole milk complex, because the conclusion is stated in the disjunctive, and because the authors prefaced their conclusion with the word "probably." Appellants also challenge the validity of the conclusion in the light of various of the specific data developed by the experiment.

Sufficient it is to say, however, that we think the publication fairly discloses that ascorbic acid is involved in the development of the oxidized flavor in milk, and that appellants by their claimed process for preventing that flavor by eliminating by well known methods the ascorbic acid from the milk have merely confirmed the accuracy of that disclosure. The same inventive concept is found in both. Appellants have merely used concededly well known methods of removing ascorbic acid to accomplish the objective of preventing the development of the tallowy flavor in milk where the reference publication fairly and clearly announces that such oxidized flavor results from the presence of ascorbic acid in the milk. That disclosure is a conclusion reasonably deducible from the experiment conducted to test the tenableness of a hypothesis assembled from data already existent in the art. The challenged references are as adequate in their disclosure as those held to be proper in the cited cases, supra,

and we hold that the reference publications were properly relied upon by the tribunals below. We agree with them that appellants' process is unpatentable over the disclosure of the references. In view of the state of the art, as illustrated by the references, it is impossible to accede to the view that what the appellants have done rises to the dignity of the inventive act required by R.S. 4886, 35 U.S.C. 31, 35 U.S. C.A. § 31.

As this conclusion is determinative of the case, we need not consider the other grounds of rejection The decision of the Board of Appeals accordingly is affirmed.

Affirmed.