**Application of PAPPAS et al.**

**No. 6033.**

United States Court of Customs and Patent Appeals.
June 30, 1954.

Charles S. Wilson, Farmingdale, L. I., N. Y. (Eugene H. Purdy, Washington, D. C., and Franz O. Ohlson, Jr., Farmingdale, L. I., N. Y., of counsel), for appellants.

E. L. Reynolds, Washington, D. C. (H. S. Miller, Washington, D. C., of counsel), for the Commissioner of Patents.

Before O'CONNELL, JOHNSON, WORLEY, COLE, and JACKSON (retired), Judges.

JOHNSON, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner in finally rejecting claims 10, 12, 13, 14 and 19 of appellants' application, Serial No. 568,-802, for a patent on "Airfoils." No claim has been allowed.

Claims 10, 13 and 14 are considered representative and read as follows:

"10. An airfoil section derived from a basic thickness distribution contour having a chord, an elliptical forebody the longitudinal axis of which coincides with said chord and the transverse axis of which is normal to the chord at a point situated aft from the leading edge approximately forty per cent (40%) of the length of the chord, and an afterbody convergent aft from the ends of said transverse axis.

"13. An airfoil section having a high limiting Mach number wherein its forward portion is a substantial ellipse with its major axis extending aft from the leading edge a distance approximately equalling sixty-five per cent (65%) of the length of the chord and having a maximum thickness of about eighteen per cent (18%) of the length of the chord at a point situated aft from the leading edge a distance equal to approximately forty per cent (40%) of the length of the chord, and its aftward portion tapers aft from the forward portion to a sharp trailing edge.

"14. An airfoil section derived from a basic thickness distribution contour having a substantially elliptical portion extending aft from the leading edge approximately sixty-five per cent (65%) of the length of its chord, a maximum thickness of about eighteen per cent (18%) of the length of its chord in a plane normal to the chord situated aft of the leading edge approximately forty per cent (40%) of the length of the chord, and a generally wedge shaped aft portion having its upper and lower surfaces tangential to the aft end of the elliptical portion."

Claim 12 is similar to claim 13, but it adds that the major axis is cambered with respect to the chord and that the after portion is tangential to the aft end of the forward portion, while leaving out the limitation as to the maximum thickness of the airfoil and its location with respect to the leading edge. Claim 19 is similar to claim 14, but adds that the forebody is symmetrical, that the maximum thickness is not more than 18% and that the afterbody (tail portion) extends over substantially 35% of the chord.

The reference relied on is:

"Flight" Magazine issue of November 4, 1937 pages 450, 451.

As can be seen from the claims, appellants' alleged invention is for an airfoil, said to give increased efficiency at high speeds, having an elliptical forward portion and a convergent rearward portion ending in a relatively sharp trailing edge. The airfoil has a maximum thickness of 18% of the length of the chord, which thickness is located at a point approximately 40% of the distance from the leading edge to the trailing edge. Also the elliptical portion of the airfoil extends over approximately 65% of the length of the chord, and of course, the tail portion extends over the remaining portion of the chord, approximately 35%.

The reference relied on is an article published in "Flight" magazine, which is apparently a statement of the conclusions reached by a Mr. C. N. H. Lock in a paper he gave before the Royal Aeronautical Society. The article states that "The main conclusion * * * is that it is very desirable when designing an

aircraft to avoid points of high local velocity at which the local velocity of sound may be exceeded." The article goes on to discuss five shapes shown in a figure, the one which is pertinent here being the showing of an elliptical airfoil and a streamline airfoil in the same drawing. The streamline airfoil is formed by the addition of a tail section, which converges to a relatively sharp trailing edge, to the elliptical airfoil. This is set forth in the article as follows:

"In practice, the advantage of the ellipse is offset by the risk of a breakaway at the rear; this can be prevented by the addition of a tail as shown. The tests in the American high-speed tunnel suggest that the maximum thickness should be 0.4 chords from the leading edge, which is nearer the tail than the position for the usual Joukowski section; accordingly, for the purpose of the present report, a streamline shape is obtained by adding to an ellipse a tail of 25 per cent of the original chord length."

A table is given in the article of various "Fineness Ratios" for a "Symmetrical Streamline aerofoil" which ranges from a value of 0.05 to 0.25. This is actually the thickness ratio of the airfoil, or the maximum thickness expressed as a percentage of the chord length. In the figure showing the drawing of the streamline shape it is set out that the "Thickness ratio" of the streamline shape shown is "0.16.," while the "Thickness ratio" for the elliptical shape is "0.20." It should be remembered that the streamline shape is shown as the same drawing as the elliptical shape, with the convergent tail added. The article also states that "The ideal shape is an ellipse with streamline tail and with center line slightly cambered * * * the maximum thickness should be at 0.4 chords from the leading edge."

The examiner rejected all of the appealed claims as fully anticipated by the article in "Flight" magazine. This rejection was made in a letter dated March 2, 1951, which stated that "By permission of the Commissioner of Patents this case is reopened for further prosecution after decision favorable to applicants as rendered by the U. S. Court of Customs and Patent Appeals." The previous case before this court was In re Pappas, 185 F.2d 695, 38 C.C.P.A., Patents, 746. In that case we held that the showing of appellants involved invention over a combination of a number of references.

After the examiner's rejection, appellants submitted an affidavit by one Jerry Pavelka. This affidavit was to the effect that the "Flight" reference did not teach the alleged invention disclosed by appellants. The examiner held that the affidavit merely presented an argument against the rejection and treated it as part of appellants' argument against the rejection. He then rejected all of the claims as being unpatentable over the "Flight" reference and stated that all of the features set forth in the claims were fully anticipated by the reference. This second letter of the examiner also contained a "proof" that the shape relied on in the "Flight" article had a forebody that extended over 66⅔% of the chord and that the tail portion extended over the remaining 33⅓% of the chord. This proof was made by a mathematical calculation, and there is no question raised as to the correctness of the examiner's calculations. This letter was the examiner's final rejection of the claims.

On appeal the Board of Appeals affirmed this rejection. The board stated that the affidavit "merely states the opinion of the affiant with respect to the disclosure of the reference" and that it did not agree with the opinions of the affiant. The board also stated that it had checked the mathematics of the examiner and found them "to be without error."

Appellants rely on six stated reasons for appeal. The first two state that the board erred in affirming and in not reversing the examiner's rejection of the appealed claims. The next two state that the board erred in affirming the rejection on the reference "Flight" and in not allowing the claims over the disclosure of that reference. The last two al-

lege that the board erred in its affirmance in not giving proper weight to the affidavit of Jerry Pavelka.

■ We will consider the last reasons first. Both the examiner and the board held that the affidavit of Pavelka was merely an argument or a statement of opinion and as such was not entitled to any weight. This is, in our opinion, a proper holding. We have studied the affidavit carefully but fail to find any factual data set out therein. The affidavit is merely the statement of the opinion of an employee of applicants' assignee as to the patentability of the alleged invention over the cited reference. An affidavit which is merely a statement of the affiant's opinion is not entitled to any weight. In re Pierce, 35 F.2d 781, 17 C.C.P.A., Patents, 626. See also, In re Pomeroy, 64 F.2d 681, 20 C.C.P.A., Patents, 1026.

Appellants' brief sets out the definition of many of the technical terms used in the claims which are peculiar to the aeronautics art. All of these terms will be found in the footnote to the prior case. In re Pappas, supra. For convenience we reproduce three, stated to be taken from Jordanoff's Aviation Dictionary (Harper & Brothers, New York, 1942):

"Fineness Ratio: is the ratio of the length to the maximum diameter of a streamline body, such as an airship hull.

"Thickness Ratio: is primarily the ratio of the maximum thickness of the profile of an airfoil to the length of the chord.

"Maximum Thickness: the greatest thickness of the profile measured on a line normal to the chord and it is usually expressed as a percentage of the chord length."

From the above we believe that it can be readily seen that the fineness ratio of an airfoil would be the thickness ratio.

The first four reasons of appeal can be considered together as alleging that the board erred in affirming the rejection on the reference cited. Considering the claims in order, claim 10 calls for an airfoil with an elliptical forebody wherein the longitudinal axis of the ellipse coincides with the chord of the airfoil and the transverse axis of the ellipse is normal to the chord at a point aft of the leading edge of the airfoil, approximately 40% of the length of the chord and the afterbody converges aft from the ends of the transverse axis. We believe this claim was properly rejected as fully anticipated by the "Flight" reference. The reference definitely teaches that a streamline airfoil can be obtained by adding a wedge shaped, or converging tail to an elliptical airfoil. This is clear from both the drawing and the language of the article. The reference also states that "the maximum thickness should be at 0.4 chords from the leading edge." Of course, the maximum thickness of an ellipse is the transverse axis of the ellipse so the transverse axis must be at 0.4 chords from the leading edge.

■ However, appellants argue that there is no specific teaching in the reference that "the maximum thickness should be at 0.4 chords from the leading edge." Since the article uses the word "should" they say this is merely wishful thinking and not a direct teaching that it is possible. We note that the article says "The tests in the American high-speed tunnel *suggest* that the maximum thickness should be 0.4 chords from the leading edge." (Emphasis supplied.) This indicates to us that definite tests conducted in a "high-speed tunnel" indicate that the best performance will be obtained if "the maximum thickness is placed at 0.4 chords from the leading edge." Moreover, the figure relied on by both the examiner and the board shows, as we have indicated previously, a drawing of an elliptical airfoil with a "Thickness ratio" of "0.20" and, in the same drawing, merely by adding to the "ellipse a tail of 25 per cent. of the original chord length" a streamline airfoil is obtained having a "Thickness ratio" of "0.160." The maximum thickness of an ellipse, the transverse axis, is at 50% of the length of the

chord, the longitudinal axis. To change this thickness from "0.20" to "0.160" it is necessary to increase the chord, the longitudinal axis, by 25% of its original length, as stated in the article. Any lesser increase would give a maximum thickness greater than "0.160" and any greater increase would give a maximum thickness of less than "0.160." This is obvious from a mere consideration of the figures, "0.20" and "0.160," given in the drawing. For example:

If the transverse axis equals 1.00, then the longitudinal axis must equal 5.00, since $\frac{1.00}{5.00}$ equals 0.20.

If X equals the increase in the length of the chord from the elliptical airfoil to the streamline airfoil, then $\frac{1.00}{5.00 + X}$ equals 0.160, and;

1.00 equals 0.160 (5.00 + X), and;
1.00 equals 0.80 + 0.160X, and;
0.20 equals 0.160X, Therefore;
X equals 1.25, which is, of course, 25% of 5.00.

When the chord is increased by 25%, naturally the point of maximum thickness, which remains at the 50% point of the original chord, is at the 40% point of the increased chord. Therefore, we conclude that this teaching is definite and within the four corners of the article. We have held that a publication is a sufficient anticipation if it teaches the "same inventive concept" as the application. In re Krukovsky, 184 F.2d 333, 38 C.C.P.A., Patents, 731.

Coming now to claim 12, this requires an airfoil having a substantially elliptical forward portion, with its major axis cambered, extending over a distance "approximately equalling sixty-five per cent" of the length of the chord and having an aftward portion tangential to the rear of the elliptical portion, convergent to a sharp trailing edge. The figure relied on shows all of this with the possible exception of the "sixty-five per cent" requirement. However, the examiner has demonstrated that to have a streamlined airfoil with an elliptical forward portion

and the maximum thickness at 40% of the chord, as required by claims 10, 13, 14 and 19, the elliptical portion must necessarily extend over a distance "approximately equalling sixty-five per cent" of the length of the chord. The appellant has not questioned the "proof" given by the examiner, but he does argue that the examiner had to assume that the extension of the chord for the tail portion was 25% and that the tail portion was composed of straight lines, tangential to the elliptical portion. As we have previously stated, the addition to the chord of the elliptical airfoil must be 25% of the original chord from the clear disclosure of the reference. By assuming that the tail portion was straight lines the examiner arrived at the figure of 66⅔% for the elliptical portion of the airfoil. Of course, the tail portion could be composed of variously curved lines, tangential to the elliptical portion, and still have the forward portion extend over a distance "approximately equalling sixty-five per cent" of the length of the chord. Therefore, the assumption of a straight line tail portion is merely for convenience in arriving at the approximate points of tangency, which would vary slightly as the tail section was varied in the interest of "streamlining." We agree with the conclusion of the board:

> " * * * that each of the tangent points of the curved lines would not depart substantially from the point of tangency of the straight line, when the curved lines reasonably depart from the straight line for streamlining, * * *, the point of tangency disclosed in the reference is in fact "approximately sixty-five percent (65%) of the length of the chord" when projected thereon as required in the claims on appeal."

Claim 13 requires that the maximum thickness be "about eighteen per cent" of the length of the chord at a point that is approximately 40% from the leading edge, in addition to the limitations of claim 12. The only new requirement here is that the maximum thickness be

"about eighteen per cent." This, we believe is fully met by the drawing, hereinbefore referred to, which gives the maximum thickness of the streamline airfoil as 0.160% of the length of the chord. Moreover, the table in the article suggests that the maximum thickness can vary from 0.05 to 0.25, which includes "about eighteen per cent." See In re Ayers, 154 F.2d 182, 33 C.C.P.A., Patents, 874; and also In re De Vaney, 185 F.2d 679, 38 C.C.P.A., Patents, 735.

Claims 14 and 19 contain substantially the same limitations as claim 13 and were properly rejected on the reference. The limitation in claim 19 that the maximum thickness be "not more than 18% of the length of the chord" is obviously anticipated by a maximum thickness of 0.160. As for the afterbody extending over "substantially 35% of the chord," this is merely a corollary of the limitation that the forward portion extend over substantially 65% of the chord, and is met by the reference for the same reason as the latter limitation.

The appellants argue that "the Examiner's holding that the tail portion is tangential to the elliptical portion is an assumption made only in the light of Appellant's invention." With this argument we cannot agree. The drawing shows that the tail section of the streamline airfoil is smoothly joined to the elliptical section, and the smoothest intersection between curved lines or a curved and a straight line, which will give the least possible resistance to flow over the surface, is the tangential intersection of those lines. We are of the opinion that to form the streamline airfoil, without increasing the drag of the airfoil, the tail must, of necessity, be formed tangential with the elliptical portion. This would follow from the basic theory of aerodynamics, without reference to any teaching of the appellants.

■ Appellants also argue that the reference is insufficient because it is "completely silent as to an airfoil having a forebody and an afterbody." This has no bearing on the pertinency of the reference. It is not necessary that the publication describe the invention in the same terms as the application, but only that it disclose the same inventive concept. In re Krukovsky, supra. We think it well to point out that appellants do not use the terms "forebody" and "afterbody" consistently in the claims. In claim 10 "forebody" is used to denote that portion of the airfoil forward of the point of maximum thickness and "afterbody" that portion that is aft of this point. This use conforms to the definition of the terms given in the specification. However, in claim 19 it is stated that the "forebody" extends from the leading edge approximately 65% of the length of the chord, while the "afterbody" extends over substantially 35% of the chord, with the point of maximum thickness located at the 40% point on the chord.

 We have carefully considered all of appellants' arguments as well as all of the cases cited in their brief. However, we do not believe that the Board of Appeals erred in their decision. For the reasons hereinbefore stated, the decision of the board is affirmed.

Affirmed.

JACKSON, J., retired, sat for GARRETT, C. J.