52 CCPA

**Application of Jerry E. COTNER.**

**Patent Appeal No. 7369.**

United States Court of Customs
and Patent Appeals.

June 24, 1965.

———◆———

Neal A. Waldrop, Detroit, Mich., for appellant.

Clarence W. Moore, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

SMITH, Judge.

Appellant's application serial No. 728,-095, filed April 14, 1958, is entitled "Method of Coating Metallic Surfaces and Articles Produced Thereby." Claims 1–6, 8, 9, 10, 14, 15, 17–19 and 21–24 were rejected by the examiner and this holding was affirmed on appeal to the Board of Appeals and adhered to upon reconsideration.

The references relied upon are:

| | | | |
|---|---|---|---|
| Curtin | 2,210,850 | Aug. | 6, 1940 |
| Lum | 2,516,008 | July | 18, 1950 |
| Curtin | 2,846,342 | Aug. | 5, 1958 |

As to the precise ground for rejection, the record is needlessly confused because the examiner did not clearly state the statutory basis for the rejection and the attorneys for appellant did not secure a clarification of the statement of rejection. Thus as the matter reaches us on appeal, we find appellant devoting a substantial portion of his brief and argument to the issue of "anticipation" arising under 35 U.S.C. § 102(a), while the major thrust of the solicitor's argument and brief is that the invention is not patentable because it was obvious within the meaning of 35 U.S.C. § 103.

Thus the areas in which issues were joined in the Patent Office are poorly defined and we are required to speculate somewhat as to what issue or issues are before us for decision.

We shall begin our consideration by attempting to determine precisely what invention is covered by the appealed claims and how this invention is related to the art of record. The claims on appeal relate to a method for forming corrosion-resistant and paint-receptive coatings on metallic surfaces by the application of aqueous acidic solutions which chemically interreact with the surface to form the coating. The claims each contain limitations which define particular conditions under which the manipulative steps may be carried out. Appel-

lant's brief contains the following statement of the field to which the claimed invention relates:

> The present invention is in the field of coatings for metal surfaces which are formed by applying to the metal surface an aqueous solution which chemically interreacts with the surface to form an integral coating, such as zinc phosphate, manganese phosphate, sodium dihydrogen phosphate, chromates and the like. The chemical reaction in products which are formed are integral with and tenaciously adhere to the surface of the metal and are useful as corrosion inhibitors, as a base for paint or other organic finishes, as aids in protecting the metal during bending, drawing or other cold forming steps either before or after the metal surface has been painted. * * *

Appellant's contribution to this general field resides essentially in a method which involves the steps of pre-heating the metal surface to be coated, creating extremely fine atomized particles of the coating solution and directing those particles toward the heated surface, and continuously controlling the quantity and size of the atomized particles directed toward the surface relative to the metal surface temperature such that the particles react with the metal surface and remain in substantially the locus of their original impact. The number of successive applications of the atomized particles to the surface is selected to produce a surface which is uniformly coated with the predetermined thickness of the reaction product coating.

One area in which appellant and the solicitor seem to be in agreement is that the issues on this appeal can be determined on the basis of the teachings of Curtin 2,846,342. They disagree, however, as to the statutory basis for the rejection predicated thereon. After a review of the record and the briefs, we have concluded that the statutory ground of rejection probably is 35 U.S.C. § 103, for we agree with appellant that Curtin does not disclose the claimed invention with the particularity required by the decisions to be a direct anticipation under 35 U.S.C. ⸰ 102(a). While it is somewhat hazardous to guess as to what the examiner meant by his statement that certain of the claims were rejected as "substantially met by Curtin," it is somewhat less dangerous to speculate that when he rejected certain claims as "unpatentable over" Curtin, he was fumbling towards a rejection under 35 U.S.C. § 103 for obviousness.

The decision of the board does nothing to clarify this situation; however, the solicitor states in his brief:

> Appellant characterizes the principal rejection on Curtin 2,846,342 too narrowly—as being one of supposed anticipation under 35 U.S.C. § 102 (R–3). Actually, the terminology "substantially met by" has been considered equivalent to "unpatentable over", indicating a rejection within the meaning of 35 U. S.C. § 103, In re Dwyer et al., 50 CCPA 1230, 317 F.2d 203, 137 USPQ 540.

We are very reluctant to decide appeals by first guessing at what the rejection is. We do so here solely because we think the interests of both the appellant and the public require us to do so. Our best guess is that the rejection before us is a rejection for obviousness under section 103 and we shall decide the matter on this basis.

The eighteen appealed claims are directed to the previously described process, except for claim 19 which is for a metallic article coated by the process of claim 1. Claims 1 and 2 are bases for all the other appealed claims and seem to be determinative for all. We agree with appellant that there are differences between his disclosed invention and the invention of Curtin when both are considered in their entireties. Thus, the limitations defined by the appealed claims set forth the conditions under which appellant asserts the coating is formed in the process of his invention. They are readily understood by consider-

ing claim 1, in tabular form, as presented by appellant:

1. A process for forming protecting coatings on metallic surfaces at least a portion of which has a vertical component which comprises the steps of

    (A) heating the said metallic surface,

    (B) directing toward said surface gas atomized particles having a size in the range of about 15 to about 350 microns of an aqueous coating forming material which forms a coating on said surface by inter-reacting with the surface of said substrate contacted thereby,

        (1) the said substrate being heated to a temperature sufficient to cause the temperature thereof to be at least about 135° F after said material is applied thereto,

        (2) the size of the particles, the quantity and the number of successive applications thereof to the surface being coated being controlled such that

            (a) the particles thereof remain in substantially the locus of their original impact and

            (b) the surface is uniformly coated.

Appellant's position as stated in his brief is:

The present invention provides the first process by which the disadvantages of flooding, dipping or spraying of the solution which is applied to the surface to form the coating can be eliminated and that procedure involves first, a basic change in the method, namely, heating the work to be coated instead of the coating solution, and secondly, applying to the heated surface to be coated the coating solution in the form of gas atomized minute particles of sufficiently minute size to enable the heat of the surface to flash off the water in the particle, effect a reaction with the surface and cause the reaction product to remain in substantially the locus of original contact of the aqueous particle with the surface. * * *

It appears, therefore, that the advance which appellant asserts he has contributed to this art is correlating the temperature of the surface to be coated with the quantity and size of the droplets or particles of the coating solution in the atomized fog moving toward the surface to be coated to the end that the chemical reaction between the minute particles and the surface occurs at the point of contact of that particle and the surface leaving dry reaction products integrally attached to the surface of the metal in the location of initial particle impact.

The major premise of appellant's argument is that "Curtin 2,846,342 is deficient at applicant's point of novelty by failing to disclose, teach or suggest how to concurrently correlate atomization application conditions to enable one skilled in the art to obtain the benefits of applicant's herein claimed process."

We think appellant's major premise is faulty in that it seems to be based upon his continuing concept that the rejection here is predicated on the concept of anticipation under section 102. Instead, we think we must consider Curtin under section 103 for what it teaches to one of ordinary skill in this art and then determine whether the differences between Curtin and the claimed invention are such that the invention when made would have been obvious to such person.

Curtin discloses coating metals with a reactive aqueous solution containing hexavalent chromium and a reducing agent therefor. Initially, Curtin mentions spraying techniques while desiring

that the chromate solution be "sprayed on with as little excess as possible" and noting that residual heat from a sheet rolling operation will "evaporate the solvent and produce the coating." Curtin extends these concepts to what is here referred to as his "third method" wherein the metal object is purposely rather than incidently heated. The following is the most pertinent portion of the Curtin reference:

Another method for producing the coating is as follows:

The thoroughly cleaned sheet or other metal object is pre-heated to a fairly high temperature, for example 250° to 300° C., dependent somewhat on the thickness of the metal. The coating solution is then sprayed onto a hot surface in the form of a fine mist in an amount sufficient to cover completely the surface while providing little or no runoff. Coating formation is almost instantaneous, the residual heat of the metal providing the temperature for the chemical reactions and the drying of the surface.

This is a most convenient, rapid method of applying bonding coats and is particularly applicable to continuous processing. In addition to the chromic hydroxide coatings of the present invention, it works remarkably well with the process for producing spinel types of coatings, referred to above. It may also be used in coatings which are principally phosphates or oxalates.

The differences between the Curtin disclosure and the invention defined in appellant's claims are: (1) Appellant preheats the metal part to a temperature such that it will not be less than 135° F. after the coating forming solution has been applied to the surface. However, as stated in the specification,

* * * The substrate metal may satisfactorily have a temperature as high as about 800° F. prior to the moment of initial contact of the atomized solution, but for the majority of applications temperatures

between about 175° F. and about 500° F. have been found to be satisfactory. Since the process requires a transfer of heat from the substrate to the atomized particle in order to effect the vaporization of the excess water and other non-coating forming ingredients thereof therefrom, the original temperature of the substrate which is needed is as least partially dependent upon the mass of the substrate being coated. * * *

Curtin in his "third method" specifies a "fairly high temperature, for example, 250° to 300° C. [482°–572° F].". Since Curtin clearly states the control conditions which are to be met, we think these temperature differences are those which would be obvious to those skilled in this art in practicing the Curtin process.

(2) Curtin specifies a "fine mist" but is silent as to the size of his "fine mist" spray particles, whereas appellant's claims call for "a size in the range of about 15 to about 350 microns." This range appears to be that for the phosphate solution "with gun set at normal spray opening," i. e., nozzle open ¼ turn for certain runs and "gun wide open" for other runs. It would seem to be obvious to one of ordinary skill in this art to utilize various particle size ranges and the optimum nozzle opening adjustment. Appellant seems to have arrived at the optimum ¼ turn nozzle opening adjustment for his gun in much the same manner as one skilled in this art would normally be expected to do in spraying a vertical surface, viz. successively decreasing the nozzle opening until no running excess appeared on the surface. We think such nozzle adjustment with its resultant control of the atomized spray particle sizes would be obvious to a person of ordinary skill in this art.

(3) Semantic differences between appellant's claims and the Curtin disclosure are relied upon by appellant to support his position that there is an art-recognized difference between "runoff" referred to by Curtin and what appellant terms "run-down." Claim 8 avoids this

semantic problem by referring simply to "running." However, base claims 1 and 2, after referring to a certain correlation of process factors, describes this phenomenon as being "such that the particles thereof remain in substantially the locus of their original impact and the surface is uniformly coated."

We think to one skilled in this art such a statement in the claims means no more nor less than Curtin's statement that:

The thoroughly cleaned sheet or other metal object is pre-heated to a fairly high temperature, for example, 250° to 300° C., depending somewhat on the thickness of the metal. The coating solution is then sprayed onto the hot surface in the form of a fine mist in an amount sufficient to cover completely the surface while providing little or no runoff. Coating formation is almost instantaneous, the residual heat of the metal providing the temperature for the chemical reactions and the drying of the surface.

As bearing on this phase of the matter, appellant has supplied affidavits of Cavanagh, Gibson, Richards and Russell as persons skilled in this art who found this difference in terminology to be significant to them. In disposing of these affidavits the board said:

The affidavits by Russell, Gibson and Richards are to the effect that they, as experts in this art, derive no teaching from Curtin how to avoid run-down or even runoff from the solution sprayed on the metal surface. These affidavits are not controlling or even admissible for the purpose submitted. In re Reid, 37 CCPA 884; 1950 C.D. 194; 634 O.G. 694; 179 F.(2d) 998; 84 USPQ 478; In re Pappas et al., 41 CCPA 989; 1954 C.D. 278; 687 O.G. 451; 214 F.(2d) 172; 102 USPQ 298. The affidavit of Cavanagh describing certain comparative tests also carries little weight. In re Michalek, 34 CCPA 1124; 1947 C.D. 458; 604 O.G. 223; 162 F.(2d) 229; 74 USPQ 107; The Bullard Co.

et al. v. Coe, 1945 C.D. 13; 573 O.G. 547; [79 U.S.App.D.C. 369] 147 F.(2d) 568; 64 USPQ 359; In re Crockett et al., 47 CCPA 1018; 1960 C.D. 356; 758 O.G. 244; 279 F.(2d) 274; 126 USPQ 186, 188.

We have examined the affidavits in question and find them admissible as expert testimony. As such, they express opinions which this court is bound to consider and evaluate in arriving at our decision. We have so considered them but are not persuaded that the semantic discrepancies point up unobvious differences in substance between appellant's claimed invention and the Curtin prior art disclosure.

In view of the foregoing, the decision of the board is affirmed on the issue we think it passed on, i. e., obviousness of the claimed invention under 35 U.S.C. § 103.

Affirmed.